UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

KAIRABA IDA RAY        *        CIVIL ACTION

VERSUS        *        NO. 20-1325

ANDREW SAUL,        *        SECTION "A" (2)
ACTING COMMISSIONER OF
SOCIAL SECURITY        *

**ORDER AND REASONS**

Claimant Kairaba Ida Ray seeks judicial review pursuant to § 405(g) and § 1382(c)(3) of

the Social Security Act ("the Act") of a final decision of the Commissioner of the Social Security

Administration (the "Commissioner") denying Ray's claims for supplemental security income

benefits ("SSI") under Title XVI of the Act.[1]   This matter was referred to a United States

Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c)

and Local Rule 73.2(B), upon the written consent of all parties.  ECF No. 21.

## I.   PROCEDURAL HISTORY

Ray is currently a 44-year-old man with no relevant work history.  *See* Administrative

Record, ECF No. 18 (hereinafter, Transcript ("Tr.")), at 25, 38–39, 144, 174–85.  His age

classification at all times was that of a "younger person."  20 C.F.R. §§ 404.1563(c), 416.963(c).

He filed this most recent application for SSI alleging disability commencing on January 1, 2010,

with an amended onset date of October 13, 2017.  Tr. 37, 144.[2]  Claimant alleges he is disabled

due to bipolar disorder, schizophrenia, depression, anxiety disorder, gout, rheumatoid arthritis,

back problem, carpal tunnel, COPD and high blood pressure.  Tr. 63.

---

[1] 42 U.S.C. §§ 405(g), 423, 1381a.
[2] Claimant appears to have filed for SSI benefits on previous occasions.  Tr. at 63.

Ray's application was denied at the agency level on March 22, 2018. Tr. 78–81. Claimant filed a written request for a hearing (Tr. 83), and the matter was heard on June 18, 2019, before Administrative Law Judge ("ALJ") Thomas G. Henderson. Tr. 34–60. Ray appeared and testified at the hearing and was represented by counsel, Laure Atchinson. *Id.* Beth Drury, an impartial vocational expert, also appeared and testified at the hearing. *Id.*

On July 11, 2019, the ALJ issued a decision denying Ray's application for benefits. Tr. 13–26. After the Appeals Council denied review on March 2, 2020, the ALJ's decision became the final decision of the Commissioner for purposes of this Court's review. Tr. 1–3. Ray filed this matter on May 1, 2020. ECF No. 1. He filed a motion for summary judgment on January 22, 2021 (ECF No. 20), and the Commissioner filed a response, designated as a cross-motion for summary judgment, on March 4, 2021. ECF No. 22.

## II.   STATEMENT OF ISSUES ON APPEAL

In his one statement of error, Claimant identifies two related issues:

1.   The ALJ's decision is unsupported by substantial evidence as the ALJ failed to reconcile the favorably weighted opinion of Dr. Buxton with the RFC determination.

2.   The ALJ failed to provide legitimate reasons for discounting the opinion of LPC Hess.

## III.   ALJ's FINDINGS

The ALJ made the following findings in his ruling:

1.   The claimant has not engaged in substantial gainful activity since October 13, 2017, the application date (20 CFR 416.971 et seq.).

2.   The claimant has the following severe impairments: osteoarthritis, obesity, and schizoaffective disorder (20 CFR 416.920(c)).

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except limited to only occasional postural activities; no climbing of ladders or scaffolds; must avoid concentrated exposure to hazards, such as heights and dangerous machinery; limited to understanding, remembering and carrying out simple routine and repetitive tasks; with only incidental work interaction; no public interaction; and in a routine work setting with minimal variations.

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on July 5, 1977 and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since October 13, 2017, the date the application was filed (20 CFR 416.920(g)).

Tr. at 15, 16, 18, 25 & 26.

## IV.    ANALYSIS

### A.  Standard of Review

The role of this Court on judicial review under 42 U.S.C. § 405(g) is to determine whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards are applied in evaluating the evidence.[3]   Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it is more than a

---

[3] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhar*t, 415 F.3d 457, 461 (5th Cir. 2005)); *Richard ex rel Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citation omitted); *Stringer v. Astrue*, 465 F. App'x 361, 363 (5th Cir. 2012) (citing *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)).

scintilla but less than a preponderance.[4]  A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision.[5]  The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try any issues *de novo*.[6]  Thus, this Court cannot reweigh the evidence or substitute its judgment for that of the administrative fact finder.[7]

The court must affirm the Commission's determination to deny benefits unless it finds that the ALJ applied the incorrect legal standard or that the ALJ's determination is not supported by substantial evidence.[8]  The Court weighs four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[9]

To be considered disabled and eligible for SSI,[10] a claimant must show that he is unable to perform substantial gainful activity because of a medically determinable physical or mental impairment.[11]  A "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[12]  To qualify as a disability, the impairment must

---

[4] *Richardson v. Perales*, 402 U.S. 389, 401 (5th Cir. 1971) (citation omitted); *Richard ex rel Z.N.F.*, 480 F. App'x at 776 (citing *Perez*, 415 F.3d at 461).
[5] *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citations omitted).
[6] *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000) (citations omitted); *Halterman ex rel Halterman v. Colvin,* 544 F. App'x 358, 360 (5th Cir. 2013) (citation omitted).
[7] *Newton*, 209 F.3d at 452 (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *see also Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).
[8] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).
[9] *Chrisner v. Astrue,* 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)); *accord Perez*, 415 F.3d at 462 (citation omitted).
[10] The relevant law and regulations governing claims for disability insurance benefits and SSI are identical.  *Carmon v. Barnhar*t, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).
[11] *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).
[12] *Id.* § 423(d)(3).

4

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[13]   Thus, the Claimant must prove his disability by establishing a physical or mental impairment lasting at least twelve months that prevents him from engaging in substantial gainful activity.  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has promulgated regulations that provide procedures for evaluating disability claims.[14]  "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."[15]  The claimant has the burden of proof under the first four steps; if the claimant successfully carries this burden, the burden shifts to the Commissioner at the fifth step to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.[16]  When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."[17]

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits.  At step 3, the ALJ must identify every Listing that could apply to the claimant.[18]  However, "[p]rocedural perfection in administrative hearings is not required," and a reviewing

---

[13] *Id*. § 423(d)(1), 416(i)(1); *see also Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted).

[14] *See* 20 C.F.R. §§ 404.1501–1599 & Appendices, §§ 416.901–998.

[15] *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

[16] *Id.* at 448.

[17] *Plaisance v. Astrue*, No. 08-5134, 2009 WL 4161086, at *2 (E.D. La. Nov. 23, 2009) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989)).

[18] *Audler*, 501 F.3d at 448 ("The ALJ did not identify the listed impairment for which Audler's symptoms fails to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment. Such a bare conclusion is beyond meaningful judicial review.") (internal quotation omitted).

court may only vacate a judgment if the "substantial rights" of a party have been affected.[19]  With respect to a given Listing, a claimant's substantial rights are affected where the claimant "would appear to have met [his] burden of demonstrating that [he] meets the Listing requirements" for a given Listing.[20]

## B.  Factual Background

Claimant testified that he is 41-years old, has an eighth grade education, and has limited work history, last working as a cook for a few days in 2015.  Tr. 38–39.  He lives with his mother, brother, two nephews and uncle and testified that he is not able to do much.  *Id.* 39–41.  He does shower, "brush [his] teeth and stuff," tries to read, and watches TV.  *Id.* 41–42.  He makes sandwiches, but doesn't get into cooking because the calluses on his feet, neuropathy and gout prevent him from standing for long periods.  *Id.* at 42–43.  He can do household shopping if they tell him what they want and he can go to the store to get something to eat for himself.  *Id.* at 52–53.  He sometimes sweeps and will put clothes in the basket, but denies being able to take out the trash.  *Id.* at 53.

Claimant has experienced auditory and visual hallucinations, which increase with use of drugs, leading to involuntary psychiatric hospitalizations in December 2016 and January 2017.  *Id.* at 239–42 (noting methamphetamine use 2–3 times per week during 2016); *id.* at 487 ("presents with psychosis, using meth.").[21]  Upon his January 5, 2017 discharge from in-patient psychiatric treatment, Claimant was no longer experiencing auditory or visual hallucinations, his mood had improved, and his thought process was linear.  *Id.* at 239.  He testified that he experiences paranoia,

---

[19] *Mays v. Bowen*, 837 F.2d 1362, 1362-63 (5th Cir. 1988).

[20] *Audler*, 501 F.3d at 449; *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (claimant bears burden at step three to demonstrate that he meets a given Listing).

[21] He was also hospitalized in March 2017 with thoughts of suicide and depression.  Tr. at 560 (suicidal thoughts, depression).

and at the hearing, denied that the medicine helped despite the ALJ reminding him of statements he made stating otherwise to his healthcare providers. *Id.* at 43–45.[22]  He testified that he takes his medication and sees a counselor twice a week. *Id.* at 46.  He further testified that his diabetes was controlled, but he still has pain, stinging and numbness. *Id.* at 46–48.  He testified that he cannot bend over due to back issues, has passed out when he stands up, and has pain and numbness in his hands and joints from carpel tunnel. *Id.* at 49.  He also reported heart problems that cause continuous chest pain and right arm numbness. *Id.* at 50–51.  He relates that he can drive, but does not have a vehicle and has never had a driver's license. *Id.* at 52.

Ray testified that he has trouble sleeping at night and will sleep for an hour and a half and then get up and pace all night, which he later described as pacing a little while, then sitting down on a chair, pacing a little while and then sitting on a chair. *Id.* at 55.  When asked about standing and walking, Ray testified that he can only stand "for a few minutes and I want to sit down" and he "can't do any walking" due to a large callous on his foot. *Id.* at 53–54.  He can lift a gallon of milk, but was unsure whether he could lift 10 pounds. *Id.* at 54.  Ray admitted to prior methamphetamine use, which he had stopped but relapsed once in the prior year. *Id.* at 56–57.

## C. Vocational Expert Testimony

The vocational expert, Beth Drury, testified at the hearing.  In exploring available work in the national economy, the ALJ posed a hypothetical based on an individual of the same age, limited education, with no past relevant work, limited to light work within the meaning of the Dictionary of Occupational Titles, further limited to only occasional postural activities who is unable to climb

---

[22] Following his December 2016 and January 2017 hospitalizations, Claimant inconsistently reports continued auditory hallucinations. *Compare* Tr. at 596 (May 14, 2017 (noting paranoia and "did meth yesterday" but indicates no hallucinations)), 944 (June 5, 2018), 949 (July 27, 2018), *with* Tr. at 937 (November 6, 2017), 912 (December 11, 2017), 940 (January 5, 2018), 908 (February 20, 2018), 941 (March 6, 2018), 942 (April 23, 2018), 946 (October 31, 2018), 947 (December 5, 2018), 948 (January 30, 2019) ,

ladders or scaffolds, with limited understanding, remembering and carrying out simple, routine, repetitive tasks with only incidental work interaction and no public interaction in routine work setting with minimal variation. *Id.* at 57–58. In response, Ms. Drury testified that there was work that accommodated those limitations, including markers (50,000 positions), cleaner/housekeeper (75,000 positions), and machine operator (4,900 positions). Before providing those figures, Ms. Drury reduced the potential positions by 50% to allow for the "no public contact" limitation. *Id.* at 58–59. Adding to the hypothetical, the ALJ asked whether those positions could accommodate an individual with psychological difficulties leading him to be off task up to 20 percent of the workday, to which Ms. Drury testified that the jobs she identified could not accommodate that limitation. Tr. at 59.

### D.  **Medical Evidence**

I have reviewed the medical records and the ALJ's summary of the medical evidence. Tr. 13–26. The ALJ's summary of the medical evidence is substantially correct and is incorporated herein by reference, with the modifications, corrections and highlights noted below.

### E.  **Claimant's Appeal**

Initially, Claimant raises no objection to the ALJ's findings at steps 1 and 2 of the 5-step sequential analysis. At step 2, the ALJ found that Claimant's osteoarthritis, obesity and schizoaffective disorder constitute severe impairments (20 C.F.R. § 416.920(c)), but his gout, thoracic and lumber pain, carpal tunnel syndrome, chronic obstructive pulmonary disease, and hypertension did not cause any significant limitations in his ability to meet the demands of "basic" work activity and thus were not severe under 20 C.F.R. § 416.922. Tr. at 15–16. Claimant likewise does not attack the ALJ's findings that he does not have an impairment or combination of impairments that meet or medically equals a listing at step 3 and that Claimant had no past relevant

work at step 4 of the sequential analysis.  Rather, Claimant's statement of error relates to the ALJ's decision to discount the opinion of Licensed Professional Counselor Jennifer Hess and his alleged failure to reconcile the favorably weighted opinion of Dr. Bruxton with the RFC determination. ECF No. 20-1, at 2, 12–19.

After determining Claimant's residual functional capacity ("RFC"), at step 5, the ALJ determines whether, considering his RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2, Claimant is capable of performing work available in the national economy.[23]  Ray contends that the ALJ's decision is not supported by substantial evidence because he did not reconcile Dr. Buxton's opinion with the RFC determination and failed to provide legitimate reasons for discounting Ms. Hess's opinion.  *See* ECF No. 20-1.

Claimant implies that the ALJ gave insufficient weight to his hearing testimony regarding his limitations.  *Id.* at 18.  When a claimant gives subjective testimony, the ALJ has the responsibility to evaluate the claimant's credibility.[24]  To determine credibility, the ALJ must review the entire record and express specific reasons supported by evidence in the case record for his credibility findings, but the ALJ does not have to discuss every guiding regulatory factor.[25] The ALJ found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  Tr. at 19.

If the ALJ explains his credibility findings and substantial evidence supports those findings, the Court must affirm the ALJ's credibility assessment.[26]  Here, the ALJ provided

---

[23] *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001); 20 CFR §§ 1520(e)(g), 1560(c).
[24] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2008).
[25] *Giles v. Astrue*, 433 F. App'x 241, 249 (5th Cir. 2011).
[26] *Undheim v. Barnhart*, 214 F. App'x 448, 450-51 (5th Cir. 2007).

detailed reasons for discounting Ray's testimony regarding his limitations (*see, e.g.*, Tr. 17–23). The record reflects inconsistencies between Claimant's hearing testimony and prior reports. *See, e.g.*, Tr. 188–89 (Claimant reports he takes care of personal hygiene, nutrition and medications on daily basis, has no problem with personal care without need for reminders); *id.* at 190 (reports he can use public transportation, pay bills, count change, handle a savings account and use a checkbook or money orders), *id.* at 195 (writes he is able to cook simple meals and take care of simple household tasks like laundry, dishes). Because the ALJ is best suited to make a credibility determination, the Court gives considerable deference to the ALJ's findings if substantial evidence supports those findings.[27] The ALJ's credibility determinations in this case will not be disturbed on judicial review.

The ALJ properly evaluated Claimant's impairments under the relevant medical listings and, with regard to his mental impairments, performed the required paragraphs B and C analyses under 20 C.F.R. Part 404, Subpart. P, Appendix 1, § 12.03; 20 C.F.R. § 404.1520a. Tr. at 16–18. The ALJ properly assessed whether Claimant's mental impairment resulted in at least one "extreme" or two "marked" limitations in the following broad functional areas: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentration, persistence, or pace; and (4) adapting or managing oneself. Based on the record evidence, the ALJ concluded that Claimant had moderate limitations in the first three areas and a mild limitation in the fourth. Tr. at 17. After finding that Claimant did not have either one "extreme" or two "marked" limitations, the ALJ properly moved to assess the paragraph C criteria, finding that the record evidence did not establish the presence of paragraph C criteria. Those findings are supported by substantial evidence.

---

[27] *McKnight v. Astrue*, 340 F. App'x 176, 181 (5th Cir. 2009).

### 1.   The ALJ expressly stated reasons for discounting LPC Hess's opinion

Ms. Hess's November 6, 2017 opinion is reflected on a 3-page Mental Capacity Assessment in which she checked both "marked" and "moderate" limiations in response to attributes that fall in line with concentration, persistence or maintain pace, adapting or managing one self, and interacting with others.  Tr. at 638–40.  Appellate courts, including the Fifth Circuit, have often held that checklist opinions are unworthy of credence when they are not adequately supported by or are inconsistent with the medical records.[28]  In this case, after finding Ms. Hess's opinion unpersuasive, the ALJ provided ample and legitimate reasons for discounting her opinion. Tr. at 23.  The ALJ explained that there are no office notes from Ms. Hess indicating that she treated or saw the claimant for his mental health impairment; rather, the medical evidence reflected that psychiatrist Dr. Winston Levy treated him.  *Id.*

The ALJ then quoted Ms. Hess's opinions and cited specific record evidence inconsistent with her opinion:

> Ms. Hess . . . noted that the claimant's depression and anxiety symptoms impaired the claimant's memory and recall (Exh. B5F/4). She further noted that the claimant had little interest or pleasure in doing things and he felt down, depressed and hopeless most of the time (Exh. B5F/4). She also noted that the claimant had difficulty in social situations and he had problems connecting with other people along with paranoia (Exh. B5F/5).

> However, the medical evidence does not support her statements, specifically a medical appointment in late April 2018, where the claimant reported that his mood had been pretty stable, and his medications were working well (Exh. B13F/7). He also stated that he had been looking for a job, and he was temporarily cleaning an office at the clinic he was being seen at (Exh. B13F/7). Additionally, during a medical appointment in late July 2018, the claimant stated that he experienced a lot of improvement with his anger, anxiety and paranoia, but he continued to experience all of them at a lesser intensity (Exh. B13F/14). He also reported that the work with his mental health provider had proven helpful in that

---

[28] *See DeJohnette v. Berryhill*, 681 F. App'x 320, 321-22 (5th Cir. 2017) ("The ALJ was well within its [sic] discretion to conclude that [a treating physician's] checking a single box on a single form without any supporting medical evidence did not outweigh the other substantial record evidence supporting a finding of no disability."); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) ("[T]he 'questionnaire' format typifies 'brief or conclusory' testimony.... [W]e agree with the magistrate judge's conclusion that 'due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, [the treating physician's] opinion is given little weight.'").

he was able to go to places and do things instead of being too scared or bothered to follow through (Exh. B13F/14). It was also noted that the claimant attended his sessions regularly, which would be inconsistent what Ms. Hess' statements that the claimant had marked limitations in his ability to sustain an ordinary routine and regular attendance at work (Exh. B13F/18). The claimant's expected outcome and prognosis was expected improvement and anticipated less than normal functioning (Exh. B13F/28). The evidence is consistent with the medical findings and justifies limiting the claimant to understanding, remembering and carrying out simple routine and repetitive tasks; with only incidental work interaction; no public interaction; and in a routine work setting with minimal variations.

Tr. at 23–24.  Thus, contrary to Claimant's contention (*see* ECF No. 20-1, at 19), the ALJ did not selectively cite to half-sentences and phrases to paint a misleading picture of Claimant's mental health condition.  Rather, he thoroughly reviewed the evidence including the more recent treatment records from Claimant's treating psychiatrist Dr. Levy and Claimant's own statements to demonstrate the inconsistencies between other parts of the record and Ms. Hess's opinion.

In addition, the ALJ found ***very persuasive*** the opinion of Dr. Scott Newton (Tr. at 69–75), ***persuasive*** the opinion of Dr. Buxton, Ph.D. (Clinical Psychologist who performed the Clinical Psychological Consultative Examination) (Tr. at 932–34), and ***somewhat persuasive*** the opinion of Mary Rolison, PhD (State Agency Medical Consultant) (Tr. at 62–68).  The ALJ was well within his authority to discount Ms. Hess's opinion in favor of the opinions of Dr. Newton, Dr. Buxton and Dr. Rolison, particularly given that the findings in their opinions included explanations supported by the medical records.  Tr. at 23–25.  His analysis complied with the governing standard set forth in 20 C.F.R. § 416.920c(b).  This objection is without merit.

### 2.  Dr. Buxton's Opinion and the RFC Determination

The RFC is the most a claimant can do despite his limitations. 20 C.F.R. § 416.945(a)(1). It is an administrative assessment made by the ALJ based on the totality of the evidence in the record. 20 C.F.R. §§ 416.945(a)–(e); 416.946.  When making the assessment, the ALJ should consider medical assessments, descriptions by physicians, descriptions by the claimant, and any

other evidence that shows any limitations on the claimant's ability to work.[29]  The ALJ is to resolve

any conflicts in the medical evidence after evaluating the record.[30]

Claimant argues that the ALJ failed to reconcile Dr. Buxton's opinion with the RFC

determination, citing the portion of Dr. Buxton's March 12, 2018 report following his statement

that Claimant would continue to benefit from counseling and psychoactive medication:

> [Claimant] is bright enough that he can understand simple instruction and command but would tend to be overwhelmed by more complex instruction and command.  Until there is better management of the Schizoaffective Disorder and reduction in his reported pain, then it's unlikely that other than for relatively brief intervals of time he would be able to respond in a reliable and dependable fashion as an employee.  With the accumulation of frustration and stress he would encounter in the job setting, one would likely see exacerbation in the Schizoaffective Disorder and his pain complaints.  Ultimately, one would expect that he would respond in a fashion to work to his own demise.  Secondary to the Schizoaffective Disorder, he would have difficulty establishing much less maintaining minimally adequate interpersonal relationships with coworkers and supervisors alike.

Tr. at 934.  Claimant contends that the ALJ's RFC determination does not reflect these disabling

limitations noted by Dr. Buxton.  ECF No. 20-1, at 14.

To the contrary, the ALJ accommodated Claimant's physical and mental limitations in

limiting his RFC.  The ALJ specifically recognized that "[a]n individual's residual functional

capacity is his ability to do physical and mental work activities on a sustained basis despite

limitations from his impairments.  In making this finding, the undersigned must consider all of the

claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and

416.945; SSR 96-8p)."  Tr. at 14, 17.  The ALJ's RFC addressed Dr. Buxton's stated concerns by

restricting him to performance of only light duty work, limited to understanding, remembering and

carrying out simple routine and repetitive tasks, with only incidental work interaction and no public

interaction in a routine work setting with minimal variations.  Tr. at 18.  These limitations included

---

[29] *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988).
[30] *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

13

in the RFC specifically address Dr. Buxton's concerns regarding complex instructions that could overwhelm Claimant as well as limiting interaction with coworkers or supervisors to only incidental work interactions and avoiding all interaction with the public.

In assessing RFC, "the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)."  SSR 96-8p, 1996 WL 374184 (July 2, 1996) (footnote omitted).  The issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment.[31]  Claimant cites no authority (ECF No. 20-1, at 13–17) for his contention that Dr. Buxton's opinion that Claimant would be a reliable and dependable employee only "for relatively brief intervals of time" automatically disqualifies him from being capable of performing work on a "sustained" basis.  Moreover, he ignores the fact that neither Dr. Newton (whose opinion the ALJ found very persuasive) nor Dr. Rolison (whose opinion the ALJ found somewhat persuasive) expressed any concerns regarding Claimant's ability to maintain employment within their noted limitations.[32]

Further, the ALJ specifically discussed Claimant's improvements in his mental condition, as noted in his psychiatric follow-up examinations after Dr. Buxton's evaluation.  These visits include sessions on October 31, 2018, noting stable mood and denied paranoid ideations, hallucinations, illusions, derealization or depersonalization (Tr. at 22, 946), December 5, 2018, noting happy, friendly and stable mood and denied paranoid ideations, hallucinations, illusions, derealization or depersonalization (Tr. at 22, 947), and January 30, 2019, noting slightly depressed

---

[31] *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003).
[32] *Newton*, 209 F.3d at 455 (stating that the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion).

and anxious mood and denied paranoid ideations, hallucinations, illusions, derealization or depersonalization (Tr. 22, 948). These visits reflect that the medication and therapy were working to improve the management of Claimant's condition. The ALJ is of course entitled to consider all relevant and available clinical signs and laboratory findings and how the claimant's functioning may be affected by factors including structured settings, medication, and other treatment. 20 C.F.R. § 404.1520a(c).

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. This Court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner, even if the evidence weighs against the Commissioner's decision.[33] The ALJ's finding that Claimant's mental and physical conditions do not preclude him from positions limited to light work within the meaning of the Dictionary of Occupational Titles, further limited to only occasional postural activities and unable to climb ladders or scaffolds, with limited understanding, remembering and carrying out simple, routine, repetitive tasks with only incidental work interaction and no public interaction in routine work setting with minimal variation is supported by substantial evidence.

## V.   CONCLUSION

The ALJ applied the appropriate legal standards, and substantial evidence supports the ALJ's credibility determinations and RFC findings. Further, the ALJ's hypothetical question to the vocational expert incorporated the RFC findings and supports the conclusion that, even with Claimant's physical and mental limitations, he has the residual functional capacity to perform work that exists in significant numbers in the economy.

---

[33] *Halterman*, 544 F. App'x at 360; *Stirnger*, 465 F. App'x at 364.

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Claimant's Motion for Summary Judgment (ECF No. 20) be

**DENIED** and that Claimant's Complaint be **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 28th day of September, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

16